## Nelson Morris, Edward Morris, Hubert Morris and Frank E. Vogel, Partners, Doing Business as Nelson Morris & Co., v. Peter J. Pfeffer.

1. PRACTICE—*Refusal of Special Findings—Exceptions.*—Where a party asked for special findings, which the court refused, and such refusal was not presented to the trial court as a reason for a new trial, and not assigned as error, it will not be considered by the Appellate Court.

2. MASTER AND SERVANT—*When the Master is Liable.*—The master is liable to a servant when he orders him to perform a dangerous work, unless the danger is so imminent that no man of ordinary prudence would expose himself to it.

3. SAME—*Where the Servant has Knowledge.*—Even if the servant has some knowledge of the attendant danger, his right of recovery will not be defeated, if in obeying the order he acts with that degree of prudence with which an ordinarily prudent man would act under the circumstances.

4. SAME—*What the Servant May Assume.*—When the master orders his servant to perform his work, the latter has the right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils; the servant has the right to rest upon the assurance that there is no danger which is implied by such an order.

5. Same—*Duty of the Servant.*—The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he can not be charged with negligence in obeying an order of the master, unless he acts recklessly. Whether he acted so in obeying such orders, or whether he acted as a reasonably prudent person should act, are questions of fact, to be determined by the jury.

6. Same—*Who is Boss or Vice Principal—Contributory Negligence.*— Who is a vice principal, and was the servant guilty of contributory negligence in using appliances he knew to be unsafe and dangerous, are questions to be decided by the jury.

7. Verdicts—*Not to be Set Aside When Apparently Against the Weight of the Evidence.*—A verdict will not be set aside when there is a contrariety of evidence, and the facts and circumstances by a fair and a reasonable intendment, authorize it, notwithstanding it may appear to be against the strength and weight of testimony.

**Trespass on the Case,** for personal injuries. Trial in the City Court of East St. Louis; the Hon. Benjamin H. Canby, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the February term, 1898. Affirmed. Opinion filed March 1, 1898.

Hamill & Borders, attorneys for appellants.

Jesse M. Freels and Bennett & Hunt, attorneys for appellee.

Mr. Justice Worthington delivered the opinion of the court.

On the 17th day of October, 1895, appellants were conducting a slaughter and packing establishment near East St. Louis, employing several hundred men. Parts of the animals slaughtered were boiled inside the building, and the grease, together with hot water, was conveyed to a catch basin outside the building and adjacent thereto.

This basin was divided into sections communicating at the bottom. The grease being the lighter floated on the top, while the water passing through the opening at the bottom, flowed from section to section. The grease was skimmed from the top by an employe called a "skimmer." Patrick Morrison was in October, 1895, and had been for a long time previous, the "skimmer." Another employe;

called the "carrier," took the grease when skimmed and emptied it into barrels. It was also his duty to scrape the sides of the sections so as to save what grease adhered to them. At the time of the accident, appellee, who was the "carrier," had scraped all the other sections, and was working at the one next to the building into which the hot fluid flowed. This section was five feet three inches long, three feet six inches wide, inside measurements, and four feet deep. It was three feet six inches from the bottom to the high-water mark, and six inches from this mark to the top. There was a railing or narrow two-inch plank six inches wide on the top rim of the section. In order to scrape the sides of the section, a plank was placed across the top on which the scraper stood. Appellee, having finished the last section, was in the act of rising up to turn around, and step off the plank on which he had been standing, when one end slipped from the railing of the basin, and precipitated him into the hot grease and water. He brought suit for personal injuries and recovered judgment for $1,000.

The declaration avers that plaintiff was employed as a laborer in and about the building of the defendant; that the plaintiff was directed by one of the foremen or agents of defendants, who had authority to order him to get upon the plank placed over one of the catch basins, to scrape the grease from the sides of the catch basin into which the hot grease and water flowed, and while in performance of the work, as ordered, and while exercising all due care and caution, that said plank across the catch basin was so insufficient or defective in construction as to width, length, and not having proper cleats to hold it in its place upon the top of such catch basin, as to cause it to slip from under his feet, and throw him into the scalding water and grease up to his waist, thereby scalding him, etc., so that he is permanently injured in the loss and use of his limbs and general health, and has suffered great pain, and has lost his earnings, and will lose them in the future, and has been put to expense for medicine, medical services, etc., to wit, to the amount of $200, to his damage of $10,000.

Defendant pleaded the general issue. Judgment was rendered for $1,000.

Appellant asked for two special findings, which the court refused to direct. As this refusal was not presented to the court as a reason for a new trial, and is not assigned as error, it will not be considered.

It is urged that the court erred in refusing to give appellant's instruction numbered "22."

Eighteen instructions were given for appellant, full, comprehensive, and covering every phase of the case. In the twenty-first instruction the court told the jury that "as a matter of law, an employe can not recover for an injury sustained in the course of business about which he is employed on account of defective appliances used therein, if he had knowledge of these defects causing his injury, and continued his work."

This is a broad statement, and covers the case as conditioned in the refused instruction.

We think, also, that the latter part of the twenty-second instruction was too broad. After stating that, if the plaintiff knew that the plank was unsafe or dangerous by reason of being too short or not having cleats, it says, "then, the plaintiff assumed all the risk on account of said defect, and can not recover for said injuries, and under such circumstances it is wholly immaterial and is no excuse or justification that plaintiff would be discharged if he did not use said plank, and it would be wholly immaterial whether Morrison was a boss or not."

Appellee testifies: "On the 17th of October, 1895, I was working with my buckets carrying grease, when the under boss, Morrison, stopped me and directed me to go and clean the catch basin. He said: 'You take that board— here is a good, handy board—and you go ahead and clean that catch basin, and hurry up if you know what is good for you, and you want to keep your job.' I said, 'I think the board looks small.' I meant it was not long enough by the looks of it. * * * I trusted in him and took the board and went to work." And again: "When

Morrison gave me the board he said, 'Where in the hell
was you all morning? Stein wants that catch basin cleaned
in a hurry. It ought to have been done long ago. Now,
hurry up and get a move on you, if you know what is good
for you. Here is a good, handy board.' * * * Stein
was the boss. He hired me. The boss I had to listen to
was Morrison. Stein would give the orders to Morrison
and he would give them to me, and if I would not do it
he would report it and I would be discharged." And
again, in cross-examination: "I used this plank in the
other three sections or partitions. * * * I knew the
length of the board when I got on it, but thought I could
clean the basin on the board by being careful. * * * I
told Morrison it looked short, and he said, 'It is long
enough and strong enough to hold you up.' I believed in
him, and tried it, and thought I could make it by being
careful."

In Ill. Steel Co. v. Schymanowsky ,162 Ill. 459, the court
say: "The master is liable to a servant when he orders the
latter to perform a dangerous work, unless the danger is so
imminent that no man of ordinary prudence would incur.
Even if the servant has some knowledge of attendant dan-
ger, his right of recovery will not be defeated if, in obey-
ing the order, he acts with the degree of prudence which an
ordinarily prudent man would exercise under the circum-
stances. When the master orders his servant to perform
his work, the latter has the right to assume that the former,
with his superior knowledge of the facts, would not expose
him to unnecessary perils; the servant has the right to rest
upon the assurance that there is no danger, which is
implied by such an order. The master and servant are not
altogether upon a footing of equality. The primary duty
of the latter is obedience, and he can not be charged with
negligence in obeying an order of the master, unless he acts
recklessly in so obeying. Whether he acted thus recklessly
in obeying his master's orders, or whether he acted as a
reasonably prudent person should act, are questions of fact
to be determined by the jury."

An employe might fear that an appliance was dangerous, and yet believe that by its careful use he would receive no injury. The assurance of the master or his representatives that it was safe, coupled with an order to use it at once, under threat of discharge, are circumstances proper to be considered by the jury, and should not be excluded by instruction. The latter part of the refused instruction in effect tells the jury that all these circumstances are " wholly immaterial." We think, for this reason, that there was no error in refusing the instruction.

The testimony of the witnesses Irwin Fricke and Charles Fricke, as to the authority of Morrison from June to August and from April to May, 1895, is objected to as not being pertinent. An order of business proved to exist is presumed to continue when conditions are the same. In addition to this appellee testifies : " I worked for defendant at the time Mr. Fricke testified that he was working there, and Mr. Morrison continued to exercise the same authority up to the time of the accident that he did at the time Mr. Fricke was working there." The testimony of appellee to the effect that Morrison's authority was the same at the time of the accident as when the Frickes worked there, makes their testimony pertinent, even if not pertinent before.

The real contest in the case turns upon two points, viz.: Was Morrison a boss, a vice-principal, and appellee working under his orders, and was appellee guilty of contributory negligence in using an appliance that he knew was unsafe and dangerous.

These were questions to be decided by the jury. The instructions bearing upon these were clear, and the finding was for appellee. It would serve no useful purpose to lengthen an opinion by an extended analysis of testimony.

" If any rule of this court can be so well established as to be neither questioned nor to require the citations of authorities to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances by a fair and reasonable intendment, will

authorize the verdict, notwithstanding it may appear to be against the strength and weight of testimony." Ill. Central R. R. Co. v. Gillis, 68 Ill. 317.

This rule applies to the present case. There is a "contrariety" of evidence. The jury was fully instructed as to what were material allegations in the declaration, and that they must be proved by a preponderance of the evidence. They listened to the contradictory testimony, and found that the material allegations were proved. Their functions as triers of fact should be recognized unless it has been clearly abused or misused. Judgment affirmed.